# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THE BICYCLE PEDDLER, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 2372 |
| v. | ) | |
| | ) | |
| DOES 1-12 | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Bicycle Peddler, LLC, brings a complaint for copyright infringement against twelve unnamed "John Doe" defendants who, it alleges, unlawfully acquired and transferred Plaintiff's copyrighted motion picture "Trade of Innocents" (the "Movie"). Plaintiff alleges that it observed the defendants accessing the Movie using BitTorrent protocol, but it has thus far been able to identify the defendants only by their Internet Protocol ("IP") addresses and the dates and times when they accessed the movie. Plaintiff now moves for leave to subpoena the non-party Internet Service Providers (the "ISPs") from which the Doe defendants obtain internet access in order to discover the Doe defendants' true identities. For the reasons explained below, the Court grants Plaintiff's motion for leave to take early discovery. However, the Plaintiff may not publish the identities of the Doe defendants in any way without further leave of court.

## BACKGROUND

BitTorrent is a software protocol that facilitates the practice of peer-to-peer file sharing used to distribute large amounts of data over the internet. To share information using BitTorrent, an initial file-provider (the "seeder") elects to share an initial file, called a "seed," with a torrent network. The file to be distributed is divided into segments called "pieces." Other users ("peers")

intentionally connect to the seed file to download it. As each peer receives a new piece of the file, the peer also immediately becomes a source of that piece for other peers, relieving the original seeder from having to send that piece to every peer requesting a copy. This is the key difference between BitTorrent and earlier peer-to-peer file sharing systems: "BitTorrent makes file sharing a cooperative endeavor." Sean B. Karunaratne, *The Case Against Combating BitTorrent Piracy through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 290 (2012) (hereafter, *The Case Against Mass Joinder*). It is "architecturally impossible for any peer on the network to take without giving." *Id.* at 288.

After a peer completely downloads the file, it continues to transmit pieces of the file to other users until it disconnects from BitTorrent. As additional peers request and receive pieces of the same file, each user becomes a part of the network from which the file can be downloaded. As more users join the network, the speed and efficiency of downloads increases. The group of seeders and peers uploading and downloading the identical file are called a "swarm." While connected to the swarm, users continuously download pieces of the file until they have obtained a complete file and continuously upload pieces of the file to other users in the swarm. Even after a user exits the swarm, the identical file pieces that the user downloaded from other users and then shared with peers continue to circulate throughout the swarm. BitTorrent swarms can survive continuously for months or even years.

Plaintiff alleges that the Doe defendants each joined the same BitTorrent swarm to download and upload the Movie. The Plaintiff retained Crystal Bay Corporation (the "Investigator") to identify the IP addresses of those BitTorrent users who were copying and distributing the Movie. The Investigator used forensic software to isolate swarms distributing the Movie, and produced an exhibit showing the IP addresses of twelve Doe defendants who joined

2

the same swarm and shared identical copies of the Movie. The Investigator confirmed that each of the Doe defendants was in the same swarm because each downloaded file was identified by the same "hash checksum." A hash checksum is a string of alphanumeric characters generated by applying a mathematical algorithm to a digital file; any differences in the digital file will cause the algorithm to produce a different result. The Investigator then used geolocation functionality to confirm that each of the IP addresses it identified was located in Illinois. Although IP addresses do not reveal the names or the contact information of the subscribers, they do reveal the location of the internet line used for the transaction, and the Plaintiff confirmed that the internet lines appear to be located in cities and towns within this district. The Investigator also reported that each Doe defendant participated in the swarm between December 2, 2012, and February 12, 2013. Some of the Doe defendants participated in the swarm within minutes of one another, but others participated days or months apart from one another. For example, Doe 1 participated in the swarm more than 70 days after Doe 12 had participated.

Plaintiff seeks leave to subpoena the ISPs associated with the IP addresses it has identified as belonging to users who participated in the swarm. Plaintiff will ask the ISPs to provide information sufficient to identify each Doe defendant.

## DISCUSSION

Fed. R. Civ. P. 26(d) prohibits parties from seeking discovery "from any source" before the parties have conferred in accordance with Rule 26(f), except when authorized by the Federal Rules of Civil Procedure, stipulation, or a court order. District courts have broad discretion in managing the discovery process. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). Courts "evaluate a motion for expedited discovery 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Ibarra*

*v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)). Under the circumstances at hand, it is reasonable to allow the Plaintiff the opportunity to discover the Doe defendants' true identities prior to any Rule 26(f) conference. The Plaintiff seeks to discover only the names, mailing addresses, telephone numbers, e-mail addresses, and MAC addresses[1] of the Doe defendants. The Plaintiff needs this expedited discovery because it will otherwise be unable to maintain this litigation, as it has no other way of identifying the defendants. And the defendants will not be burdened by the Plaintiff's requests, as their ISPs, rather than the defendants themselves, will be required to respond to the subpoenas.

One issue that bears further discussion is the Plaintiff's joinder of multiple Doe defendants in a single civil complaint. A plaintiff may join defendants in a suit presenting any question or law or fact common to all defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). There is a split of authority nationally and within this district over whether it is appropriate to join in a single lawsuit many anonymous defendants who are alleged to have participated in a single BitTorrent swarm. *Compare, e.g., Malibu Media, LLC v. Does 1-6*, --- F.R.D ----, 2013 WL 2150679, *11 (N.D. Ill. May 17, 2013) (allowing joinder); *Pacific Century Int'l v. Does 1-31*, No. 11 C 9064, 2012 WL 2129003, *3 (N.D. Ill. June 12, 2012) (same); *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 257 (N.D. Ill. 2011) (same); *with Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, *14 (N.D. Ill. Mar. 7, 2013) (rejecting joinder); *Digital Sins, Inc. v.*

---

[1] A "MAC address" is a unique number assigned to the hardware of a particular computer or other device. *United States v. Schuster*, 467 F.3d 614, 618 n. 1 (7th Cir. 2006).

*Does 1-245*, No. 11 C 8170, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) (same); *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11 C 3995, 2012 WL 1570765, *11 (E.D.N.Y. May 1, 2012) (same).

The disagreement among the courts centers on the question of whether claims against multiple defendants who participated in the same BitTorrent swarm arise out of the same transaction or series of transactions, as required for joinder under Rule 20(a)(2)(A). Though there are substantial arguments on both sides of this issue, entering a *sua sponte* finding misjoinder of the Doe defendants would, in my judgment, be inappropriate at this early stage of this proceeding. The Plaintiff alleges that each Doe defendant deliberately participated in a BitTorrent swarm that consisted of a series of transactions in which swarm participants shared pieces of the same file with one another. When the Doe defendants allegedly joined the swarm, they consented (implicitly, at least) both to download pieces of the Movie from other members of the swarm *and* to upload pieces of the Movie to other swarm participants. For at least the period that the defendants were connected to the swarm, that conduct easily appears to satisfy the "same transaction" requirement for joinder. Even critics of mass joinder in copyright infringement cases concede that joinder of defendants who participate contemporaneously in a swarm is plainly appropriate. *See, e.g., The Case Against Mass Joinder, supra*, at 293.

But what of defendants who were part of the same swarm at different times? If John Doe 1 leaves the swarm before John Doe 10 joins, then Doe 1 could not, of course, have provided a piece of the file to Doe 10 directly. That fact suggests to some that joinder of Does 1 and 10 would not be appropriate. *See, e.g., The Case Against Mass Joinder* at 294-95; *Reynolds*, 2013 WL 870618 at *13 (stating that joinder is appropriate where defendants accessed the swarm simultaneously or within hours of one another); *Digital Sins, Inc. v. Does 1-245*, 2012 WL

1744838 at *2 (rejecting joinder where defendants shared movie "in separate and isolated incidents over the course of 59 days"). That argument, however, appears to overlook the fact that the pieces of the file that Doe 1 distributed directly to other Does who were in the swarm contemporaneously with Doe 1 were in turn subsequently distributed by them to the Does who joined the swarm after Doe 1 left it; in the context of a swarm, there is only a single digital file that is distributed among the members. Thus, it cannot be said that subsequent transfers of that file are entirely "independent" of the earlier transfers; all of the transfers involve the very same digital file and the earlier transfers of the pieces of that file facilitate the later transfers. Moreover, nothing in Rule 20 suggests that joinder requires a direct transaction between every defendant. To the contrary, the language of the Rule permitting joinder where there has been a "series" of transactions seems expressly to contemplate that the transactional link between parties may be more attenuated. These considerations have prompted a number of courts to conclude that joinder in these cases may extend more broadly than contemporaneous participation in a swarm would allow. *See, e.g., Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 195 n. 11 (D. Mass. 2012) ("the Court holds that the interaction of the Doe defendants via BitTorrent—even if indirect—is significant enough to bring them within the broad scope of permissibly joined parties under Rule 20(a)"); *Third Degree Films v. Does 1-36*, No. 11 C 15200, 2012 WL 2522151, *9 (E.D. Mich. May 29, 2012) ("Therefore, Doe No. 10 plausibly *indirectly* uploaded pieces of the work to, say, Doe No. 25 who participated in the swarm four days later.") (emphasis in original); *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993) ("Imagine a number of 'transactions or occurrences' spread out through time and place. They are not directly continuous, or else they would constitute one transaction or

occurrence rather than a number of them. What would make them a 'series?' The answer is some connection or logical relationship between the various transactions or occurrences.").

As noted above, BitTorrent requires a cooperative endeavor among those who use the protocol. Every member of a swarm joins that cooperative endeavor knowing that, in addition to downloading the file, they will also facilitate the distribution of that identical file to all other members of the swarm, without regard to whether those other members were in the swarm contemporaneously or whether they joined it later. In that light, permitting joinder among non-contemporaneous swarm participants does not seem novel or extreme; the law governing joint ventures and conspiracies, for example, clearly permits plaintiffs to proceed against groups of defendants who engaged in a cooperative endeavor to facilitate an unlawful object whether or not all of the members of the group took part in all of the actions of the group and without regard to when the members joined the group. *See, e.g., State of Ohio ex rel. Fisher v. Louis Trauth Dairy*, 856 F. Supp. 1229, 1239-40 (S.D. Ohio 1994) (allowing joinder of all defendants who allegedly participated in any of three overlapping conspiracies to violate the antitrust laws); *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108, 116 (C.D. Cal. 1978) (where conspiracy defendants share a common objective, it makes no difference that they join the "conspiracy at different times and at different places, or that they [do] not personally know one another or all details of the conspiracy everywhere").

That is not to say that it would necessarily be appropriate to join in the same lawsuit every participant in a long-running swarm that persisted indefinitely. These are analogies, and may break down at the extremes, but for purposes of this issue, in this case, they suggest that it would be premature to deny the plaintiff an opportunity to identify by name the potential defendants in this suit. Here the Plaintiff has limited its complaint to participants who are likely

7

located in this district and who participated in a swarm over a relatively brief time frame.[2] For these reasons, the Court will not *sua sponte* find misjoinder at this time and will grant the Plaintiff leave of Court to issue the subpoenas it proposes. The Court recognizes, however, that no defendant has had the opportunity to brief the joinder issue, and this ruling does not foreclose any future challenge to the propriety of joinder in this case. The Doe defendants, after they have been identified and served, may raise the issue if they so choose.

Though the Plaintiff may issue subpoenas to determine the Doe defendants' true identities, the Court will prohibit the Plaintiff from publishing the defendants' identities in any way without further leave. BitTorrent litigation often involves "matters of a sensitive and highly personal nature," *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, *5 (N.D. Ill. Aug. 27, 2012) (citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979)), and even where—as here—that is not a factor, there remains a substantial possibility that the names turned over by ISPs will not accurately identify the individuals who actually downloaded or shared the copyrighted material. *See, e.g., Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (estimating that 30% of the individuals whose names were disclosed to plaintiffs did not download the copyrighted material). Balancing these concerns on one hand against the public's interest in knowing the defendants' true identities, the Court finds that allowing the defendants to proceed by pseudonym is appropriate at this preliminary stage of the litigation, when no defendant has

---

[2] Further, while many BitTorrent copyright infringement cases arise in the context of pornographic movies, others, including this case, do not. Thus, none of the concerns that animate many of the district court opinions rejecting joinder in BitTorrent cases involving pornographic films—such as the potential for unfair, if not extortionate, settlement practices—are present in this case. In any event, courts should be hesitant to fashion rules that may be based more on distaste for the copyrighted works or the nature of a plaintiff's business rather than on application of neutral legal principles.

been put on notice of this suit. Once defendants have received such notice, and had an opportunity to seek such relief, the Court will revisit the issue of whether the names of the defendants in this matter may be publicly disclosed.

Entered: July 9, 2013

John J. Tharp, Jr.
United States District Judge